FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS
01/21/2021 10:02 AM
CV 2021 01 0095

## IN THE COMMON PLEAS COURT OF BUTLER COUNTY, OHIO
### CIVIL DIVISION

| | | |
|---|---|---|
| **ALLIED P&C INSURANCE COMPANY:** | | **CASE NO.** |
| **1100 Locust Street** | | |
| **Des Moines, IA 50391** | : | **JUDGE** |
| | | |
| **Plaintiff,** | : | |
| | | |
| **v.** | : | |
| | | |
| **CARL DOWLER, INDIVIDUALLY,** | : | |
| **AND AS PERSONAL** | | |
| **REPRESENTATIVE OF THE** | : | |
| **ESTATE OF MELISSA DOWLER,** | | |
| **DECEASED** | : | |
| **550 Melissa Drive** | | |
| **Oxford, OH 45056-2538** | : | |
| | | |
| **And** | : | |
| | | |
| **ASHLEY DOWLER** | : | |
| **550 Melissa Drive** | | |
| **Oxford, OH 45056-2538** | : | |
| | | |
| **Defendants.** | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT;
### WITH JURY DEMAND ENDORSED HEREON

Now comes Plaintiff, Allied P&C Insurance Company (hereinafter "Allied"), pursuant to Rule 57 of the Ohio Rules of Civil Procedure and Chapter 2721 of the Ohio Revised Code, and for its Complaint for Declaratory Judgment against Defendants, Carl Dowler, individually and as personal representative of the Estate of Melissia Dowler (hereinafter "Carl Dowler"), and Ashley Dowler (hereinafter "Ashley Dowler"), avers the following:

SW&J
**Subashi,**
**Wildermuth**
**& Justice**

The Greene Town Center
50 Chestnut Street
Suite 230
Dayton, Ohio 45440

phone    937-427-8800
fax       937-427-8816

1

## <u>PARTIES, FACTUAL BACKGROUND, & OHIO LAW</u>

1.     Plaintiff, Allied, is a corporation domiciled in Iowa and duly licensed and authorized by the Ohio Department of Insurance to sell property and casualty insurance policies to Ohio residents. Allied's Ohio address is One W. Nationwide Blvd., Columbus, Ohio 43215.

2.     At all times relevant, Defendants, Carl and Ashley Dowler, have resided in Ohio, with a residential address of 550 Melissa Drive, Oxford, Ohio 45056.

3.     At all times relevant hereto, Melissa Dowler, deceased, was a resident of 550 Melissa Drive, Oxford, Ohio 45056. Melissa Dowler was the mother of Ashley Dowler.

4.     At all times relevant hereto, Carl Dowler was the husband of Melissa Dowler and the father of Ashley Dowler.

5.     On September 11, 2020, Ashley and Melissa Dowler were vacationing in Montana. Ashley Dowler was operating an Enterprise rental vehicle in which her mother, Melissa, was a passenger. Ashley and Melissa were the only occupants of the Enterprise rental vehicle.

6.     Ashley Dowler was driving southbound on Highway 93 in Lake County, Montana when Darlene Lesage negligently drove left-of-center and caused a head-on collision with the Dowler vehicle.

7.     The negligence of Darlene Lesage was the sole cause of this two-vehicle collision. Darlene Lesage was the only occupant of the vehicle she operated.

8.     Ashley Dowler and Melissa Dowler were injured in the subject collision. Melissa Dowler died, allegedly as a result of injuries she sustained from the collision.

9.     Ashley Dowler and Melissa Dowler were the only people who were present at the collision scene, who sustained bodily injury caused by Darlene Lesage's negligence, and who have presented liability claims against Lesage. No other pedestrian, motorist, or vehicle occupant was injured by Lesage's negligence.

SW&J

**Subashi,
Wildermuth
& Justice**

The Greene Town Center
50 Chestnut Street
Suite 230
Dayton, Ohio 45440

phone    937-427-8800
fax       937-427-8816

10. By order of the Probate Division of the Butler County, Ohio Court of Common Pleas, Carl Dowler was appointed the personal representative of the Estate of Melissa Dowler. *See* Butler County Court of Common Pleas, Probate Division case number PE20-12-1071.

11. At the time of the subject collision, Darlene Lesage was covered under an auto liability insurance policy issued by Farmers Union Insurance Company, with liability limits of $100,000 per person and $300,000 per accident.

12. At the time of the subject motor vehicle collision, Allied insured Carl Dowler, Melissa Dowler, and Ashley Dowler pursuant to Auto Policy No. 92 34 J 158439 ("Auto Policy"). A true and correct copy of the Auto Policy is attached hereto as Exhibit "A" and incorporated herein by reference.

13. Allied issued the Auto Policy in Ohio, to Ohio residents, and the vehicles identified in the declarations were garaged and licensed in Ohio.

14. Allied issued the Auto Policy to the Dowlers through an agent located in West Chester, Ohio.

15. The Dowlers paid the Auto Policy premiums in Ohio.

16. Carl Dowler and Ashley Dowler presented claims to Allied, under the Auto Policy, for the recovery of underinsured motorists benefits ("UIM" benefits) and medical payments benefits ("med pay" benefits) arising out of the subject collision of September 11, 2020.

17. The auto liability limits available to Darlene Lesage under her policy with Farmers Union Insurance Company are equal to the UIM limits available under the Auto Policy. As such, under clear Ohio law, Defendants are not entitled to recover UIM benefits under the Auto Policy. Contrary to Ohio law, the Dowlers assert otherwise – they claim entitlement to UIM benefits under the Auto Policy.

SW&J

**Subashi,**
**Wildermuth**
**& Justice**

The Greene Town Center
50 Chestnut Street
Suite 230
Dayton, Ohio 45440

phone    937-427-8800
fax       937-427-8816

3

18.     Allied has issued med pay benefits to, or on behalf of, Ashley Dowler for medical bills she incurred because of the collision in the amount of $5,000.  As such, Allied has already paid the maximum limit of the med pay coverage available to Ashley Dowler under the Auto Policy.  Dowler seeks to recover additional med pay benefits from Nationwide.

19.     Allied has issued med pay benefits to, or on behalf of, Carl Dowler for medical bills incurred for the care of Melissa Dowler caused by the collision in the amount of $5,000.  As such, Allied has already paid the maximum limit of the med pay coverage available to Melissa Dowler/Carl Dowler under the Auto Policy.  Dowler seeks to recover additional med pay benefits from Nationwide.

20.     Because of the clear and unambiguous terms, definitions, exclusions, and conditions of the Auto Policy, Allied files this declaratory judgment action asking this Honorable Court to declare that the Defendants, and the beneficiaries, next-of-kin, and/or subrogees/assignees (if any) of Melissa Dowler, are not entitled to recover UIM benefits, med pay benefits, or any other type of insurance benefits under the Auto Policy.

21.     In *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474 (2001), the Supreme Court of Ohio determined that an action for recovery of UIM benefits sounds in contract, "even though it is tortious conduct that triggers applicable contractual provisions."  *Id.* at syllabus 1.  As such, contractual choice of law provisions govern "[q]uestions involving the nature and extent of the parties' rights and duties under an insurance contract's underinsured motorist provisions."  *Id.* at syllabus 2.  Under *Ohayon* and its progeny, Ohio law applies to the Auto Policy.  Under Ohio law, the Dowlers are not entitled to UIM benefits, and they are not entitled to additional med pay benefits.

22.     Ohio Revised Code section 3937.18, titled "Uninsured and underinsured motorist coverage," states, in part:  "(C) If underinsured motorist coverage is included in a policy

SW&J
**Subashi,
Wildermuth
& Justice**

The Greene Town Center
50 Chestnut Street
Suite 230
Dayton, Ohio 45440

phone     937-427-8800
fax        937-427-8816

of insurance, the underinsured motorist coverage shall provide protection for insureds thereunder for bodily injury, sickness, or disease, including death, suffered by any insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the underinsured motorist coverage. Underinsured motorist coverage in this state is not and shall not be excess coverage to other applicable liability coverages, and shall only provide the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable to the insured were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." R.C. 3937.18(C).

23. Under clear Ohio law, UIM coverage is not excess coverage.

24. Additionally, Ohio law authorizes an insurer to include policy language that prohibits stacking of coverages and/or coverage limits. R.C. 3937.18(F). The Auto Policy contains anti-stacking language.

25. Revised Code section 3937.18 also authorizes an insurer to "include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim." R.C. 3937.18(G). The Auto Policy included such language.

## AUTO POLICY PROVISIONS

26. Allied issued the Auto Policy to the Dowlers with a policy term of February 11, 2020 to December 15, 2020.

ǁSW&Jǁ
**Subashi,
Wildermuth
& Justice**

The Greene Town Center
50 Chestnut Street
Suite 230
Dayton, Ohio 45440

phone    937-427-8800
fax       937-427-8816

5

27.    The Auto Policy contained an express choice of law provision, which read as follows: "The contract law of the state where the policy was issued governs the interpretation of this contract, except for the Mutual Policy Conditions and Proxy, which shall be governed by the insuring company's state of domicile." PERSONAL AUTO POLICY, form A 4500 07 16, Page 24 of 27. Allied issued the Auto Policy to the Dowlers in Ohio. Ohio law governs and determines whether and to what extent the Dowlers are entitled to insurance benefits under the Auto Policy.

28.    The Auto Policy included med pay benefits coverage, with limits of $5,000 each person. The Auto Policy stated: "The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of" insureds, claims made, vehicles or premiums shown in the declarations, or vehicles involved in the accident. PERSONAL AUTO POLICY, form A 4500 07 16, Page 13 of 27.

29.    The Auto Policy provided UIM coverage, through endorsement A 5234 07 16, "UNDERINSURED MOTORISTS COVERAGE – OHIO," with limits in the amount of $100,000 each person and $300,000 each occurrence. The endorsement read, in relevant part, as follows:

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

1.    Sustained by an "insured"; and

2.    Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

We will pay under this coverage only if **1.** or **2.** below applies:

1.    The limits of liability under any bodily injury liability bonds or policies applicable to the "underinsured motor vehicle" have been exhausted by payment of

SW&J
Subashi,
Wildermuth
& Justice

The Greene Town Center
50 Chestnut Street
Suite 230
Dayton, Ohio 45440

phone    937-427-8800
fax      937-427-8816

judgments or settlements; or

    2.    A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

        a.    Have been given prompt written notice of such tentative settlement; and

        b.    Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

**B.** "Insured" as used in this endorsement means:

    1.    You or any "family member".

    2.    Any other person "occupying" "your covered auto".

    3.    Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

**C.** "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but its limit for bodily injury liability is either:

        a.    Less than the limit of liability for this coverage; or

        b.    Reduced by payments to others injured in the accident to an amount which is less than the limit of liability for this coverage.

\*\*\*

## LIMIT OF LIABILITY

**A.** The Limit Of Liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident.  Subject to this limit for each person, the Limit of Liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury: resulting from any one accident.

This is the most we will pay regardless of the number of:

**1.**    "Insureds";

**2.**    Claims made;

**3.**    Vehicles or premiums shown in the Declarations; or

**4.**    Vehicles involved in the accident.

**B.** The limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible.  This includes all sums paid under Part **A** or this policy.

**C.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A**, Part **B** or Part **C** of this policy.

$S\,W\&J$

**Subashi,
Wildermuth
& Justice**

The Greene Town Center
50 Chestnut Street
Suite 230
Dayton, Ohio 45440

phone      937-427-8800
fax         937-427-8816

    **D.**  We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

## FIRST CLAIM FOR DECLARATORY JUDGMENT

30.    Allied incorporates by reference herein the foregoing paragraphs as if the same were more fully set forth at length herein.

31.    Under the clear language of the Auto Policy – including, but not limited to, the definition of "Underinsured motor vehicle" -- and under Ohio law, the Dowlers are not entitled to recover UIM benefits under the Auto Policy.

32.    Additionally, under the clear language of the Auto Policy, and under Ohio law, the Dowlers are not entitled to recover additional med pay benefits.

33.    Accordingly, Allied is entitled to a declaration that it does not owe UIM benefits to the Dowlers, and it does not owe additional med pay benefits to the Dowlers.

## SECOND CLAIM FOR DECLARATORY JUDGMENT

34.    Allied incorporates by reference herein the foregoing paragraphs as if the same were fully set forth herein.

35.    The Dowlers' claims for recovery of insurance benefits under the Auto Policy are governed by Ohio law, pursuant to a contractual choice of law provision, and for the other reasons specified herein, in accordance with *Ohayon* and its progeny.

36.    A justiciable controversy has arisen between the Dowlers and Allied regarding whether Ohio law or Montana law should apply to the Dowlers' claims under the Auto Policy.

37.    Accordingly, Allied is entitled to a declaration that Ohio law applies to the Dowlers' claims under the Auto Policy.

## THIRD CLAIM FOR DECLARATORY JUDGMENT

38.    Allied incorporates by reference herein the foregoing paragraphs as if the same were fully set forth herein.

SW&J

**Subashi,
Wildermuth
& Justice**

The Greene Town Center
50 Chestnut Street
Suite 230
Dayton, Ohio 45440

phone    937-427-8800
fax       937-427-8816

8

39.     The subject Allied policy defines "bodily injury" as follows:

> Bodily injury means bodily harm, sickness or disease, including death that results. Bodily injury does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm to the same person.

40.     Carl Dowler was not involved in the subject accident. But, he is, nevertheless, seeking underinsured motorist benefits for alleged emotional distress.

41.     There is no coverage for Carl Dowler's alleged emotional distress under the subject Allied policy or under Ohio law. Additionally, as noted above in Complaint paragraph 25, the Auto Policy included language limiting recovery to one coverage limit for all claims arising out of one person's bodily injury. And, as noted above, UIM benefits are not available to the Dowlers in an event, because Lesage's liability limits were not less than the Auto Policy's UIM limits.

42.     Accordingly, Allied is entitled to a declaration that Carl Dowler is barred from recovering any insurance coverage or benefits for his alleged emotional distress.

**WHEREFORE**, Plaintiff, Allied P&C Insurance Company, prays that this Honorable Court enter Declaratory Judgment in its favor and against the Defendants, Carl Dowler, individually and as personal representative of the Estate of Melissia Dowler, and Ashley Dowler, as requested above and reincorporated herein. The declarations should include the following, along with any other relief the Court deems necessary or appropriate:

(1)     An order declaring that Carl Dowler, Ashley Dowler, and the Estate of Melissa Dowler, Deceased, including all beneficiaries and next-of-kin and any subrogees/assignees, are not entitled to any underinsured motorist benefits under the Allied Auto Policy, nor are they entitled to recover additional med pay benefits, in any way related to or arising out of the subject collision;

|SW&J|

**Subashi,
Wildermuth
& Justice**

The Greene Town Center
50 Chestnut Street
Suite 230
Dayton, Ohio 45440

phone    937-427-8800
fax       937-427-8816

(2)     For an order declaring that Ohio law controls the rights and obligations of the parties, and specifically that, under Ohio law, Carl Dowler, Ashley Dowler, and the Estate of Melissa Dowler, including all beneficiaries and next-of-kin and any subrogees/assignees, are not entitled to any underinsured motorist benefits under the Allied Auto Policy, nor are they entitled to recover additional med pay benefits, in any way related to or arising out of the subject collision;

(3)     For an order declaring that Carl Dowler is not entitled to any underinsured motorist benefits under the subject Allied Auto Policy, in any way related to or arising out of the subject collision; and

(4)     For such other relief as this Honorable Court deems just and appropriate.

Respectfully submitted,

/s/ Brian L. Wildermuth
Nicholas E. Subashi (0033953)
nsubashi@swjohiolaw.com
Brian L. Wildermuth (0066303)
bwildermuth@swjohiolaw.com
SUBASHI, WILDERMUTH & JUSTICE
The Greene Town Center
50 Chestnut Street, Suite 230
Dayton, OH 45440
(937) 427-8800
(937) 427-8816 (fax)
*Attorneys for Plaintiff*

### JURY DEMAND

Now come Allied P&C Insurance Company to demand a trial by jury as to all issues raised herein.

/s/ Brian L. Wildermuth
Brian L. Wildermuth (0066303)

# Certification

I, Jacque Flaugher

As a duly authorized individual retained by Allied P&C Ins Co
and entrusted to procure materials from the administrative system of record
from which this copy was produced, based upon information and belief;
certify under the penalty of perjury that the attached copy of the Declaration
and or Policy pages of policy number  9234J 158439
was made at or near the time of this certification, is a true and accurate copy
of that which has been kept in the normal course of business.

Date:  January 11, 2021

*Jacque Flaugher*
_____
Signature

Jacque Flaugher
_____
Printed Name

Admin Support
_____
Title

EXHIBIT

A

Prepared on February 12, 2020    Page 1 of 2



# Your Revised Policy

**Your bill is sent separately.**
**Nationwide Auto Policy**
Policy Period:  Feb 11, 2020 - Dec 15, 2020
Policy Number:  **9234J 158439**

Carl L Dowler &
Melissa Dowler
550 Melissa Dr
Oxford, OH
45056-2538

03934001963015



What's  enclosed ————



✓ **Declarations** - These pages show **your coverages** under this policy.
Carefully review these details and call **Braden C Renners at 1.513.874.7949** if you have questions or want to make changes.
- **General Information**
- **Coverage Details**
- **Your Total Policy Premium**

✓ **Insurance Documents** - Please keep these documents for future reference.

**How to Contact Us**
Your Nationwide Agent
Customer Service
Internet
24-Hour Claims Reporting
Hearing Impaired (TTY)

**Braden C Renners 1.513.874.7949**
**1.877.669.6877**
**Nationwide.com**
**1.800.421.3535**
**1.800.622.2421**

A 2001 07 16



Prepared on February 12, 2020          Page 2 of 2

## Important Reminders from Nationwide



A 2001 07 16



Prepared on February 12, 2020      Page 1 of 4

# Your Policy Declarations

**Nationwide Auto Policy**
Policy Period:  Feb 11, 2020 - Dec 15, 2020
Policy Number:  **9234J 158439**

**Policyholder (Named Insured):**
Carl L Dowler &
Melissa Dowler
550 Melissa Dr
Oxford, OH
45056-2538

**Keep these Declarations for your records.**

---

## General Policy Information

**Issued: February 12, 2020**
These Declarations are a part of the policy named above and identified by the policy number above. They supersede any Declarations issued earlier.  Your policy provides the coverages and limits shown in the schedule of coverages. They apply to each insured vehicle as indicated. Your policy complies with the motorists' financial responsibility laws of your state only for vehicles for which Property Damage and Bodily Injury Liability coverages are provided.

**Policy Period:  February 11, 2020 - December 15, 2020** but only if the required premium for this period has been paid and only for twelve month renewal periods if renewal premiums have been paid as required. This policy is initially effective at (1) the time the application for insurance is completed, or (2) 12:01 a.m. on the first day of the policy period, whichever is later. Each renewal period begins and ends at 12:01 a.m. standard time at the address of the named insured stated herein. This policy cancels at 12:01 a.m. at the address of the named insured stated herein.

**Where to access your policy documents**

In order to view, print, or save your policy documents that do not contain personally identifiable information, go to www.nationwide.com/insurancecontracts on your Internet browser and enter your policy number.  You can get hard copies of your documents mailed or emailed to you free of charge by calling 877-ON-YOUR-SIDE ® (877-669-6877).  Please note that any policy documents containing personally identifiable information are not available for online viewing, unless you have registered for online account access.  Go to www.nationwide.com/signup to create an account.

Your carrier is Allied P&C Insurance Company, NAIC #42579.



## Changes Made to Your Policy

**Effective February 11, 2020**
2017 CHEV SILVERADO
Removed Lienholder Interest

## Premium Summary and Other Charges

| | | |
|---|---|---:|
| 2017 Chevrolet Silverado | $ | 1,121.22 |
| 2018 Jeep Compass La | $ | 919.78 |
| 2012 Chrysler 200 Ltd | $ | 1,004.50 |
| **Total Policy Premium** | **$** | **3,045.50** |

## How You Saved on this Policy with Nationwide

- Multi Car
- Accident Free
- Select
- New Vehicle
- Advance Quote
- Passive Restraint
- Home & Car

A 4560 07 16

Continued on the next page

03934001963022



Prepared on  February 12, 2020          Page 2 of 4

## Your Policy Declarations

**Nationwide Auto Policy**
Policy Period:   Feb 11, 2020 - Dec 15, 2020
Policy Number:  **9234J 158439**

For coverage definitions and descriptions,
visit Nationwide.com

---

### Rated Driver(s)

| Name | Date of Birth | Marital Status |
|------|---------------|----------------|
| Carl L  Dowler | 01/09/59 | Married |
| Ashley C  Dowler | 06/22/95 | Single |
| Melissa  Dowler | 04/08/58 | Married |

### Insured Vehicle(s) and Schedule of Coverages

#### 2017 Chev Silverado

VIN 1GCRCPECXHZ139845

| Coverages | Limits of Liability | Premium |
|-----------|--------------------|---------| 
| Bodily Injury Liability | $  100,000  Each Person | $      267.26 |
|  | $  300,000  Each Occurrence |  |
| Property Damage Liability | $  100,000  Each Occurrence | $      238.42 |
| Medical Payments | $      5,000  Each Person | $        29.08 |
| Uninsured Motorists Bodily Injury | $  100,000  Each Person | $        65.78 |
|  | $  300,000  Each Occurrence |  |
|  | See Endorsement |  |
| Damage To Your Auto | Actual Cash Value Less $      500 | $      100.44 |
|   Other Than Collision (Comprehensive) |  |  |
| Collision | Actual Cash Value Less $      500 | $      392.14 |
| Custom Equipment | $      4,000 | Included |
| Rental Reimbursement | $          30   Per Day | $        28.10 |
|  | $        900   Per Accident |  |
|  | See Endorsement |  |



Garaged At - 550 Melissa Dr          Oxford,  OH  45056-2538

**Total for this Vehicle**   $    1,121.22

Continued on the next page

**Nationwide**
is on your side

Prepared on  February 12, 2020          Page 3 of 4

## Your Policy Declarations

**Nationwide Auto Policy**
Policy Period:   Feb 11, 2020 - Dec 15, 2020
Policy Number:  **9234J 158439**

---

### Insured Vehicle(s) and Schedule of Coverages (continued)

#### 2018 Jeep Compass La
VIN 3C4NJDBB2JT282851

| Coverages | Limits of Liability | Premium |
|---|---|---|
| Bodily Injury Liability | $  100,000   Each Person | $        238.58 |
|  | $  300,000   Each Occurrence |  |
| Property Damage Liability | $  100,000   Each Occurrence | $        207.58 |
| Medical Payments | $      5,000   Each Person | $          34.54 |
| Uninsured Motorists Bodily Injury | $  100,000   Each Person | $          46.02 |
|  | $  300,000   Each Occurrence |  |
|  | See Endorsement |  |
| Damage To Your Auto | Actual Cash Value Less $        500 | $          77.48 |
|  Other Than Collision (Comprehensive) |  |  |
| Collision | Actual Cash Value Less $        500 | $        287.48 |
| Custom Equipment | $      3,000 | Included |
| Rental Reimbursement | $          30   Per Day | $          28.10 |
|  | $        900   Per Accident |  |
|  | See Endorsement |  |
| Garaged At - 3556 Pamajera Dr | Oxford,  OH  45056-9247 |  |
| Loss Payee - Capital One Auto Finance | Lien Expires On |  |
|  | **Total for this Vehicle**  $      919.78 |  |

#### 2012 Chry 200 Ltd
VIN 1C3CCBCB7CN303981

| Coverages | Limits of Liability | Premium |
|---|---|---|
| Bodily Injury Liability | $  100,000   Each Person | $        250.62 |
|  | $  300,000   Each Occurrence |  |
| Property Damage Liability | $  100,000   Each Occurrence | $        200.86 |
| Medical Payments | $      5,000   Each Person | $          39.58 |
| Uninsured Motorists Bodily Injury | $  100,000   Each Person | $          46.02 |
|  | $  300,000   Each Occurrence |  |
|  | See Endorsement |  |
| Damage To Your Auto | Actual Cash Value Less $        500 | $          82.04 |
|  Other Than Collision (Comprehensive) |  |  |
| Collision | Actual Cash Value Less $        500 | $        357.28 |
| Custom Equipment | $      3,000 | Included |
| Rental Reimbursement | $          30   Per Day | $          28.10 |
|  | $        900   Per Accident |  |
|  | See Endorsement |  |
| Garaged At - 550 Melissa Dr | Oxford,  OH  45056-2538 |  |
| Loss Payee - Regional Acceptance Corp | Lien Expires On Dec 15, 2028 |  |
|  | **Total for this Vehicle**  $   1,004.50 |  |



0393400196 3039

Continued on the next page



Prepared on February 12, 2020                Page 4 of 4

## Your Policy Declarations

**Nationwide Auto Policy**
Policy Period:   Feb 11, 2020 - Dec 15, 2020
Policy Number:  **9234J 158439**

## Policy Form and Endorsements

| | |
|---|---|
| A 4500 07 16 | Your Nationwide Auto Policy |
| A 4574 07 16 | Rental Reimbursement/Transportation Expenses - Rental Days Plus |
| A 5034 07 16 | Special Provisions - Ohio |
| A 5134 07 16 | Uninsured Motorists Coverage - Ohio |
| A 5234 07 16 | Underinsured Motorists Coverage - Ohio |

**For Office Use Only:**

11/11/19 $      0.00      Terr: 293

**Issued By:**  Allied P&C Insurance Company

**How to Contact Us**

| | |
|---|---|
| Your Nationwide Agent | **Braden C Renners 1.513.874.7949** |
| Customer Service | **1.877.669.6877** |
| Internet | **Nationwide.com** |
| 24-Hour Claims Reporting | **1.800.421.3535** |
| Hearing Impaired (TTY) | **1.800.622.2421** |





**Your Nationwide Auto Policy**

# TABLE OF CONTENTS

Page

**AGREEMENT**..................................................................................................................3

**DEFINITIONS** ...............................................................................................................3

**PART A — LIABILITY COVERAGE** ............................................................................5
    INSURING AGREEMENT
    SUPPLEMENTARY PAYMENTS
    EXCLUSIONS
    LIMIT OF LIABILITY
    OUT OF STATE COVERAGE
    FINANCIAL RESPONSIBILITY
    OTHER INSURANCE AND SOURCES OF RECOVERY

**PART B — MEDICAL PAYMENTS COVERAGE** ........................................................10
    INSURING AGREEMENT
    EXCLUSIONS
    LIMIT OF LIABILITY
    OTHER INSURANCE

**PART C — UNINSURED MOTORISTS COVERAGE** ..................................................13

**PART D — COVERAGE FOR DAMAGE TO YOUR AUTO**.........................................13
    INSURING AGREEMENT
    TRANSPORTATION EXPENSES
    EXCLUSIONS
    LIMIT OF LIABILITY
    PAYMENT OF LOSS
    NO BENEFIT TO BAILEE
    OTHER SOURCES OF RECOVERY
    APPRAISAL
    LOSS PAYABLE CLAUSE

**PART E — DUTIES AFTER AN ACCIDENT OR LOSS** ..............................................20

**PART F — GENERAL PROVISIONS**
BANKRUPTCY.................................................................................................................20
CHANGES .......................................................................................................................20
FRAUD AND MISREPRESENTATION..............................................................................21
LEGAL ACTION AGAINST US ........................................................................................21
OUR RIGHT TO RECOVER PAYMENT...........................................................................22
POLICY PERIOD AND TERRITORY................................................................................22
TERMINATION................................................................................................................22
ASSIGNABILITY .............................................................................................................23
TWO OR MORE AUTO POLICIES ..................................................................................23
OPTIONAL PAYMENT OF PREMIUM IN INSTALLMENTS.............................................24
RENEWAL.......................................................................................................................24
DIVIDENDS.....................................................................................................................24
NON-SUFFICIENT FUNDS AND LATE PAYMENT CHARGES........................................24
APPLICABLE CONTRACT LAW ......................................................................................24
INTEREST RATE.............................................................................................................24
JOINT AND INDIVIDUAL INTERESTS............................................................................24
BENEFITS .......................................................................................................................24

**MUTUAL POLICY CONDITIONS**..................................................................................25

A 4500 07 16

*Nationwide, the Nationwide N and Eagle and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. ©2015 Nationwide*

THIS PAGE INTENTIONALLY LEFT BLANK



# PERSONAL AUTO POLICY

**AGREEMENT**

In return for payment of the premium and fees in amounts we require and subject to all the terms of this policy, we agree with you as follows:

**DEFINITIONS**

**A.** Throughout this policy, "you" and "your" refer to:

    **1.** The "named insured" shown in the Declarations;

    **2.** The spouse if a resident of the same household;

    **3.** The civil partner of the named insured by Civil Union or Registered Domestic Partnership filed and recognized by the state if a resident of the same household; or

    **4.** A "Domestic partner".

If the spouse or civil partner who has entered into a Civil Union or Registered Domestic Partnership with the named insured ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse or civil partner will be considered "you" and "your" under this policy but only until the earlier of:

    **1.** The end of 90 days following the spouse's or civil partner's change of residency;

    **2.** The effective date of another policy listing the spouse or civil partner as a named insured; or

    **3.** The end of the policy period.

**B.** "We", "us" and "our" refer to the Company providing this insurance.

**C.** For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

    **1.** Under a written agreement to that person; and

    **2.** For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results. "Bodily injury" does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

**E.** "Business" includes trade, profession or occupation.

**F.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**G.** "Occupying" means:

    **1.** In;

    **2.** Upon; or

    **3.** Getting in, on, out or off.

**H.** "Property damage" means physical injury to, destruction of or loss of use of tangible property.

**I.** "Trailer" means a vehicle designed to be pulled by a:

    **1.** Private passenger auto; or

    **2.** Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in **1.** or **2.** above.



J. "Your covered auto" means:

    **1.** Any vehicle shown in the Declarations.

    **2.** A "newly acquired auto".

    **3.** Any "trailer" you own.

    **4.** Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

        **a.** Breakdown;

        **b.** Repair;

        **c.** Servicing;

        **d.** Loss; or

        **e.** Destruction.

    This Provision **(J.4.)** does not apply to Coverage For Damage To Your Auto.

K. "Newly acquired auto":

    **1.** "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

        **a.** A private passenger auto; or

        **b.** A pickup or van, for which no other insurance policy provides coverage, that:

            **(1)** Has a Gross Vehicle Weight Rating of 10,000 lbs. or less; and

            **(2)** Is not used for the delivery or transportation of goods and materials unless such use is:

                **(a)** Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

                **(b)** For farming or ranching.

    **2.** Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

        **a.** For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

        If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

        **b.** Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

            **(1)** 30 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

            **(2)** Seven days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 7-day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.



   **c.** Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

      **(1)** 30 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

      **(2)** Seven days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 7-day requirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

**L.** "Domestic partner" means a person living with you and sharing a common domestic life and whose relationship resembles a mutually exclusive partnership such as that of a marriage, and:

   **1.** Is at least 18 years of age and capable of entering into a legal contract;

   **2.** Is not a "family member"; and

   **3.** Shares with you financial interdependence and a common residence.

Evidence of such includes, but is not limited to:

   **a.** Joint domestic responsibility for the maintenance of the household;

   **b.** Having joint financial obligations, resources, or assets;

   **c.** Documents such as a driver's license, tax returns, or bills showing a common address for both parties;

   **d.** Both parties receiving mail at the same address; or

   **e.** A declaration of domestic partnership with that person or similar declaration about that person with an employer or government entity.

A "domestic partner" does not include more than one person, a roommate or housemate whether sharing expenses equally or not, or one who pays rent to the named insured.

**M.** "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

**N.** "Performance testing" is when a vehicle is used to:

   **1.** Test its performance in speed, handling; or

   **2.** Test or practice driver skills.

"Performance testing" does not apply to student-driver training activities participated in to obtain a state issued learner's permit or driver's license. "Performance testing" also does not apply to driver training activities to complete state-sanctioned courses in motor vehicle accident prevention, defensive driving or driver improvement.

## PART A — LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest on covered damages awarded against the "insured" which do not exceed our limit of liability for this coverage. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements unless required by



law. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

2. Any person using "your covered auto".

3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision **(B.4.)** applies only if the person or organization does not own or hire the auto or "trailer".

5. The following are not "insureds", under Part **A** of the policy:

   a. The United States of America or any of its agencies.

   b. Any person with respect to "bodily injury" or "property damage" resulting from the operation of an auto by that person as an employee of the United States Government. This applies only if the provisions of Section 2679 of Title 28, United States Code (Federal Tort Claims Act), as amended, require the Attorney General of the United States to defend that person in any civil action or proceeding which may be brought for the "bodily injury" or "property damage".

**SUPPLEMENTARY PAYMENTS**

We will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Upon submission for reimbursement, up to $250 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

These payments will not reduce the limit of liability.

**EXCLUSIONS**

**A.** We do not provide Liability Coverage for any "insured":

1. For "bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

   a. Is of different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

2. For "property damage" to property owned or being transported by that "insured".

3. For "property damage" to property:

   a. Rented to;

   b. Used by; or



**c.** In the care of;

that "insured".

This Exclusion **(A.3.)** does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion **(A.4.)** does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits, disability benefits, or benefits under similar laws are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used:

   **a.** To carry persons or property for a fee or compensation. This includes but is not limited to any period of time a vehicle is being used by any "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle; or

   **b.** On a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   Exclusion **A.5.a.** does not apply to vehicles used in shared-expense car pools or while the vehicle is used in the course of volunteer work for a tax-exempt organization.

6. While employed or otherwise engaged in the "business" of:

   **a.** Selling;

   **b.** Repairing;

   **c.** Servicing;

   **d.** Storing; or

   **e.** Parking;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion **(A.6.)** does not apply to the ownership, maintenance or use of "your covered auto" by:

   **a.** You;

   **b.** Any "family member"; or

   **c.** Any business partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion **A.6.**

   This Exclusion **(A.7.)** does not apply to the maintenance or use of a:

   **a.** Private passenger auto;

   **b.** Pickup or van; or

   **c.** "Trailer" used with a vehicle described in **a.** or **b.** above.

8. Using a vehicle:

   **a.** Without a reasonable belief of being entitled to do so;

   **b.** The "insured" has stolen; or

   **c.** The "insured" knows to have been stolen.

   An "insured" shall not be held to have a reasonable belief of being entitled to operate a motor vehicle if that person's license has been suspended, revoked, or never issued.

   This exclusion does not apply to the use of "your covered auto" by:

   **a.** You;



    **b.** A "family member"; or

    **c.** A business partner, employee, or agent of you or a "family member".

  **9.** For "bodily injury" or "property damage" for which that "insured":

    **a.** Is an insured under a nuclear energy liability policy; or

    **b.** Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

    A nuclear energy liability policy is a policy issued by any of the following or their successors:

    **a.** Nuclear Energy Liability Insurance Association;

    **b.** Mutual Atomic Energy Liability Underwriters; or

    **c.** Nuclear Insurance Association of Canada.

  **10.** For "bodily injury" to any person eligible to receive any benefits required to be provided or voluntarily provided by any "insured" under a:

    **a.** Workers' compensation;

    **b.** Unemployment compensation;

    **c.** Non-occupational or occupational disease;

    **d.** Disability benefits;

    or any similar law.

  **11.** For "bodily injury" or "property damage" arising out of the ownership, maintenance or use of any motor vehicle:

    **a.** While rented or leased to others by any "insured";

    **b.** If under any type of conveyance of ownership including but not limited to a conditional sale, contract for sale, or rent to own, regardless of whether title has been transferred to others by any "insured"; or

    **c.** Enrolled in a personal vehicle sharing program under the terms of a written agreement and being used in connection with such personal vehicle sharing program by anyone other than you or any "family member".

  **12.** For "bodily injury" sustained by:

    **a.** You;

    **b.** Any other "insured" person under the policy;

    **c.** Any person or member of your family residing in the same household with you; or

    **d.** Any member of the family of any other "insured" person residing in the same household with that other "insured".

**B.** We do not provide Liability Coverage for the ownership, maintenance or use of:

  **1.** Any vehicle which:

    **a.** Has fewer than four wheels; or

    **b.** Is designed mainly for use off public roads.

    This Exclusion (**B.1.**) does not apply:

    **a.** While such vehicle is being used by an "insured" in a medical emergency;

    **b.** To any "trailer"; or

    **c.** To any non-owned golf cart.

  **2.** Any vehicle, other than "your covered auto", which is:

    **a.** Owned by you; or



    **b.** Furnished or available for your regular use.

  **3.** Any vehicle, other than "your covered auto", which is:

    **a.** Owned by any "family member"; or

    **b.** Furnished or available for the regular use of any "family member".

    However, this Exclusion **(B.3.)** does not apply to you while you are maintaining or "occupying" any vehicle which is:

    **a.** Owned by a "family member"; or

    **b.** Furnished or available for the regular use of a "family member".

  **4.** Any vehicle:

    **a.** Used in an organized or prearranged competitive event, including but not limited to:

      **(1)** Racing contest or event;

      **(2)** Speed contest or event; or

      **(3)** In practice or preparation for any racing or speed contest or event.

    **b.** Used in "performance testing" that is done on a closed road, or a race track, or a testing facility environment where the "insured" is not competing.

**C.** We do not provide Liability Coverage:

  **1.** For any person's liability resulting from the handling of property:

    **a.** Before it is moved from the place where it is accepted by an "insured" for movement into or onto "your covered auto"; or

    **b.** After it is moved from "your covered auto" to the place where it is finally delivered by an "insured".

  **2.** For any person's liability resulting from the movement of property by a mechanical device (other than a hand truck) not attached to "your covered auto".

  **3.** For any of the following:

    **a.** Judgments;

    **b.** Costs;

    **c.** Attorney fees; or

    **d.** Claims;

  against an "insured" for punitive or exemplary damages.

### LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

  **1.** "Insureds";

  **2.** Claims made;

  **3.** Vehicles or premiums shown in the Declarations; or



4. Vehicles involved in the auto accident. A vehicle and attached "trailer" are considered as one vehicle. Therefore, the Limit of Liability will not be increased for an accident involving a vehicle which has an attached "trailer."

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **B** or Part **C** of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**C.** We will apply the limit of liability to provide any separate limits required by law for Bodily Injury and Property Damage Liability. However, this provision **(C.)** will not change our total limit of liability.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret this Part **A** — Liability for that accident as follows:

**A.** If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

**B.** No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the auto liability law to the extent required.

## OTHER INSURANCE AND SOURCES OF RECOVERY

**A.** In any loss involving the use of "your covered auto", we will be liable for only our share of the loss if there is other collectible liability insurance. Our share is our proportion of the total insurance limits for the loss.

**B.** For losses not involving "your covered auto", our coverage is excess over any other collectible:

1. Insurance;

2. Self-insurance;

3. Proceeds from a governmental entity; or

4. Sources of recovery.

If more than one policy issued by us or a company affiliated with us applies on an excess basis to the same loss, we will pay only up to the highest limit of any one of them.

## PART B — MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

**A.** We will pay "usual, customary and reasonable charges" for expenses incurred for "medically necessary" services or funeral costs because of "bodily injury":

1. Caused by an auto accident; and

2. Sustained by an "insured".

We will pay only those expenses incurred for services rendered within 2 years from the date of the accident.



We may apply "utilization management or review" to determine:

1. "Usual, customary and reasonable charges"; and/or

2. "Medically necessary" services.

B. "Insured" as used in this Part means:

1. You or any "family member":

   a. While "occupying"; or

   b. As a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto".

C. "Experimental treatment" means medical treatment that is experimental in nature which is not accepted as effective therapy by:

1. The state medical association or board;

2. An appropriate medical specialty board;

3. The American Medical Association;

4. The Surgeon General; or

5. The Federal Food and Drug Administration.

D. "Usual, customary and reasonable charges" means charges for services or supplies covered under this policy which are:

1. Usual and customary in the place where provided;

2. Not more than what would have been charged if the injured person had no insurance; and

3. Not "Experimental treatment."

E. "Medically necessary" means a service or procedure which is necessary, appropriate and consistent for the symptoms, diagnosis or treatment of a condition of injury or sickness within generally accepted current standards of good medical practice. The fact that any particular doctor may prescribe, order, recommend, or approve a service or procedure does not, in itself, make the service or procedure "medically necessary".

F. "Utilization management or review" means cost and utilization containment activities designed to determine "usual, customary and reasonable charges" for "medically necessary" services provided to an "insured". These activities include, but are not limited to, medical bill auditing and case management.

**EXCLUSIONS**

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when:

   a. It is being used to carry persons or property for a fee or compensation. This includes but is not limited to any period of time "your covered auto" is being used by any "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle; or

   b. It is being used on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   Exclusion **2.a.** does not apply to vehicles used in shared-expense car pools or while the vehicle is used in the course of volunteer work for a tax-exempt organization.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.



4. Occurring during the course of employment if any of the following benefits are required to be provided or voluntarily provided:

   a. Workers' compensation;

   b. Unemployment compensation;

   c. Non-occupational or occupational disease;

   d. Disability benefits;

   or any similar law.

5. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by you; or

   b. Furnished or available for your regular use.

6. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by any "family member"; or

   b. Furnished or available for the regular use of any "family member".

   However, this Exclusion **(6.)** does not apply to you.

7. Sustained while "occupying" a vehicle:

   a. Without a reasonable belief of being entitled to do so;

   b. The "insured" has stolen; or

   c. The "insured" knows to have been stolen.

   An "insured" shall not be held to have a reasonable belief of being entitled to operate a vehicle if that person's license has been suspended, revoked, or never issued.

   This exclusion does not apply to the use of "your covered auto" by:

   a. You;

   b. A "family member"; or

   c. A business partner, employee, or agent of you or a "family member".

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This Exclusion **(8.)** does not apply to "bodily injury" sustained while "occupying" a:

   a. Private passenger auto;

   b. Pickup or van; or

   c. "Trailer" used with a vehicle described in **a.** or **b.** above.

9. Caused by or as a consequence of:

   a. Discharge of a nuclear weapon (even if accidental);

   b. War (declared or undeclared);

   c. Civil war;

   d. Insurrection; or

   e. Rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

   a. Nuclear reaction;

   b. Radiation; or

A 4500 07 16



   **c.** Radioactive contamination.

**11.** Sustained while "occupying" any vehicle in any activity while:

   **a.** Used in an organized or prearranged competitive event, including but not limited to:

     **(1)** Racing contest or event;

     **(2)** Speed contest or event; or

     **(3)** In practice or preparation for any racing or speed contest or event.

   **b.** Used in "performance testing" that is done on a closed road, or a race track, or a testing facility environment where the "insured" is not competing.

**12.** Sustained while "occupying" any vehicle:

   **a.** Rented or leased to others by any "insured";

   **b.** If under any type of conveyance of ownership including but not limited to a conditional sale, contract for sale, or rent to own, regardless of whether title has been transferred to others by any "insured"; or

   **c.** Enrolled in a personal vehicle sharing program under the terms of a written agreement and being used in connection with such personal vehicle sharing program by anyone other than you or any "family member".

**13.** Caused intentionally by or at the direction of you or a "family member", including willful acts the result of which that person knows or ought to know will follow from their conduct.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

**1.** "Insureds";

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

**1.** Part **A** or Part **C** of this policy; or

**2.** Any Underinsured Motorists Coverage provided by this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C — UNINSURED MOTORISTS COVERAGE

Refer to the attached Uninsured Motorists Endorsement only if the Declarations indicate that Uninsured Motorists Coverage is provided.

## PART D — COVERAGE FOR DAMAGE TO YOUR AUTO

## INSURING AGREEMENT

**A.** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same



"collision", only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

**1.** Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

**2.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

For damage to "your covered auto's" or "non-owned auto's" windshield, we may offer to have it repaired in lieu of replacement. If you agree to our offer for the repair, we will not apply a deductible for the repair of the windshield.

**B.** "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

**1.** Missiles or falling objects;

**2.** Fire;

**3.** Theft or larceny;

**4.** Explosion or earthquake;

**5.** Windstorm;

**6.** Hail, water or flood;

**7.** Malicious mischief or vandalism;

**8.** Riot or civil commotion;

**9.** Contact with bird or animal; or

**10.** Breakage of glass.

If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

**C.** "Non-owned auto" means:

**1.** Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

**2.** Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** Loss; or

**e.** Destruction.

**D.** "Insured" as used in this Part means:

**1.** You or any "family member"; or

**2.** Any person using "your covered auto" with the reasonable belief that they are entitled to do so.

**E.** "Custom equipment" means equipment, furnishing and parts in or upon any auto, other than:

**1.** Original manufacturer equipment, furnishings, or parts; or



2. Any replacement of original manufacturer equipment, furnishings or parts with other equipment, furnishings or parts of like kind and quality.

"Custom equipment" includes but is not limited to:

1. Special carpeting or insulation;
2. Furniture or bars;
3. Height-extending roofs;
4. Body, engine, exhaust or suspension enhancers;
5. Winches, or anti-roll or anti-sway bars;
6. Custom grilles, louvers, side pipes, hood scoops or spoilers;
7. Custom wheels, tires or spinners;
8. Custom chrome, murals, paint work, decals or other graphics;
9. Caps, covers or bedliners;
10. Snowplows;
11. Handicap accessible modifications; or
12. Electronic equipment that reproduces, receives or transmits audio, visual or data signals which is permanently installed in the auto using bolts or brackets, including slide-out brackets.

## TRANSPORTATION EXPENSES

In addition, we will pay up to $20 per day, to a maximum of $600 for transportation expenses incurred by you. This applies only in the event of the total theft of "your covered auto" or a "non-owned auto". We will pay only transportation expenses incurred during the period:

1. Beginning 48 hours after the theft; and
2. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

## EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" while used:

   a. To carry persons or property for a fee or compensation. This includes, but is not limited to, any period of time "your covered auto" or any "non-owned auto" is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle; or

   b. On a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper, and mail delivery.

   Exclusion (1.a.) does not apply to vehicles used in shared-expense car pools or while the vehicle is used in the course of volunteer work for a tax-exempt organization.

2. Damage due and confined to:

   a. Wear and tear;

   b. Freezing;

   c. Mechanical or electrical breakdown or failure; or

   d. Road damage to tires.

   This Exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

3. Loss due to or as a consequence of:

   a. Radioactive contamination;



    **b.** Discharge of any nuclear weapon (even if accidental);

    **c.** War (declared or undeclared);

    **d.** Civil war;

    **e.** Insurrection; or

    **f.** Rebellion or revolution.

**4.** Loss to "your covered auto":

    **a.** While rented or leased to others;

    **b.** If under any type of conveyance of ownership including but not limited to a conditional sale, contract for sale, or rent to own, regardless of whether title has been transferred to others; or

    **c.** Enrolled in a personal vehicle sharing program under the terms of a written agreement and being used in connection with such personal vehicle sharing program by anyone other than you or any "family member".

**5.** Loss to "your covered auto" or any "non-owned auto" due to diminution in value.

**6.** Loss to any vehicle which occurs:

    **a.** While it is being used on a temporary or permanent basis, for the transportation of, or in exchange for, any illegal substance, or in connection with any criminal trade or transaction by:

        **(1)** You;

        **(2)** A "family member"; or

        **(3)** Anyone else with your knowledge or permission; or

    **b.** Due to confiscation of "your covered auto" by any law enforcement agency because of "your covered auto's" use in such activities.

**7.** Loss to:

    **a.** A "trailer", camper body, or motor home, which is not shown in the Declarations; or

    **b.** Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:

        **(1)** Cooking, dining, plumbing or refrigeration facilities;

        **(2)** Awnings or cabanas; or

        **(3)** Any other facilities or equipment used with a "trailer", camper body, or motor home.

This Exclusion **(7.)** does not apply to a:

    **a.** "Trailer", and its facilities or equipment, which you do not own; or

    **b.** "Trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:

        **(1)** Acquire during the policy period; and

        **(2)** Ask us to insure within 30 days after you become the owner.

**8.** Loss to any "non-owned auto" which you or a "family member":

    **a.** Uses without reasonable belief of being entitled to do so;

    **b.** Has stolen; or

    **c.** Knows to be stolen.

You or a "family member" shall not be held to have a reasonable belief of being entitled to operate a "non-owned auto" if that person's license has been suspended, revoked, or never issued.



This exclusion does not apply to the use of "your covered auto" by:

   **a.** You;

   **b.** A "family member"; or

   **c.** A business partner, employee, or agent of you or a "family member".

9. Loss to equipment designed or used for the detection or location of radar or laser.

10. Loss to any "custom equipment" in or upon "your covered auto" or any "non-owned auto".

   This Exclusion **(10.)** does not apply to the amount shown in the Declarations for "custom equipment" in or upon "your covered auto".

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

   **a.** Selling;

   **b.** Repairing;

   **c.** Servicing;

   **d.** Storing; or

   **e.** Parking;

   vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to "your covered auto" or any "non-owned auto":

   **a.** While used in an organized or prearranged competitive event, including but not limited to:

      **(1)** Racing contest or event;

      **(2)** Speed contest or event; or

      **(3)** In practice or preparation for any racing or speed contest or event.

   **b.** While used in "performance testing" that is done on a closed road, or a race track, or a testing facility environment where the "insured" is not competing.

13. Loss to, or loss of use of, a "non-owned auto" rented by:

   **a.** You; or

   **b.** Any "family member";

   if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

14. Loss caused intentionally by or at the direction of you or a "family member", including willful acts the result of which that person knows or ought to know will follow from their conduct.

## LIMIT OF LIABILITY

**A.** Our limit of liability per occurrence will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

In determining the amount necessary to repair damaged property, our estimate will be based on:

   **a.** The prevailing competitive labor rates charged in the area where the property is to be repaired, as determined by us; and



**b.** The cost of repair or replacement parts and equipment which may be new, refurbished, restored, or used, including, but not limited to:

    **(1)** Original manufacturer parts or equipment; and

    **(2)** Nonoriginal manufacturer parts or equipment.

However, the most we will pay for loss to:

**1.** Any "non-owned auto" which is a "trailer" is $1,500.

**2.** "Custom equipment" in or upon "your covered auto" is the amount shown in the Declarations. Coverage for "custom equipment" shall not cause our limit of liability to be increased to an amount in excess of the actual cash value of "your covered auto", including its "custom equipment".

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

**C.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**1.** Deductions for betterment apply only to parts normally subject to repair and replacement during the useful life of the insured motor vehicle.

**2.** Such deductions shall be limited to the lesser of an amount equal to the proportion that the expired life of the part to be repaired or replaced bears to the normal useful life of that part, or the amount which the resale value of the vehicle is increased by the repair or replacement.

**3.** Calculations for betterment, depreciation, physical condition and normal useful life must be included in our claim file.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

**1.** You; or

**2.** The address shown in this policy.

If we return stolen property, we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property if required by law.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

**1.** Any coverage provided by the owner of the "non-owned auto";

**2.** Any other applicable physical damage insurance; or

**3.** Any other source of recovery applicable to the loss.

**APPRAISAL**

If you and we fail to agree on the amount of the loss to "your covered auto", either party may make a written demand that the amount of the loss to "your covered auto" be determined by appraisal. If either party makes a demand for appraisal, then each party will select and pay a single, competent, disinterested appraiser, and each party will notify the other of their



appraiser's identity within 20 days of the request for appraisal. Within 20 days of selection, the appraisers shall each determine the amount of the loss to "your covered auto". Within 10 days of our receipt of the appraisers' written agreement, we will pay you the agreed-upon amount for the loss to "your covered auto".

If the appraisers are not able to agree upon an amount, then as soon as practical, but no later than 20 days after the submission of their written reports, the two appraisers will select a competent, impartial appraiser who shall be the umpire. If the two appraisers cannot agree on an umpire within 20 days after submission of their written reports, you or we may petition a court of competent jurisdiction, in the county and state of the named insured's address listed on the Declarations, to appoint a competent, impartial umpire. Immediate, written notice of the petition must be given to the other party.

The appraisers will submit their written reports to the umpire within 10 days of the selection of the umpire. In their reports, the appraisers will state the amount of the loss to "your covered auto". Neither you nor we, nor any representative of either, may discuss any aspect of the claim with the umpire prior to the issuance of the umpire's written report. The umpire will issue a written report setting the amount we will pay you for the loss to "your covered auto" within 20 days of receiving the appraisers' reports. The umpire's written report setting the amount of the loss to "your covered auto" must be agreed upon and signed by the umpire and at least one appraiser. The umpire's written report shall then be binding on both you and us.

All compensation, costs, fees or other expenses associated with or charged by the umpire will be shared equally by you and us. Any compensation, costs, fees or other expenses associated with that of an appraiser, expert witness or attorney will be borne and paid by the party who hires them. Neither we nor you waive any of the other rights, terms and conditions or obligations under this policy by requesting an appraisal.

**LOSS PAYABLE CLAUSE**

This clause applies to the Other than "collision" and "Collision" coverages provided by this policy. It protects the loss payee named in the policy Declarations.

Payment for loss will be made according to the interest of the named insured and the loss payee. At our option, payment may be made to both jointly, or to either separately. Either way, we will protect the interests of both.

Protection under this clause does not apply:

**A.** In any case of:

1. Fraud;

2. Misrepresentation, either in the application process, or in the presentation of the claim;

3. Material omission;

4. Conversion;

5. Embezzlement; or

6. Secretion;

committed by or at the direction of you or a "family member".

**B.** Where the loss is otherwise not covered under the terms of this policy.

We will not notify the loss payee each time you renew this policy, and we may cancel this policy according to the terms.

The loss payee shall notify us upon learning of any change in ownership of the vehicle.

To the extent of payment to the loss payee, we will be entitled to the loss payee's rights of recovery. We will do nothing to impair the right of the loss payee to recover the full amount of its claim.



If we become obligated to reimburse a loss payee under this coverage due to your failure to meet the policy requirements or through your failing to make your premium payments, we have the right to recover from you any money we pay.

## PART E — DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy if the person seeking coverage fails to comply with the following duties:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

  **1.** Cooperate with us in the investigation, settlement or defense of any claim or suit.

  **2.** Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

  **3.** Submit to a recorded interview and/or examination under oath as often as reasonably requested by us, while not in the presence of any other "insured" or person making a claim for any coverage under this policy, at a time and place designated by us before an individual or individuals chosen by us.

  **4.** If injured, submit to examinations by company-selected physicians as often as the company reasonably requires. The injured person must grant us authority, at our request, to obtain copies of all wage and medical, dental or other health care provider records.

  **5.** Submit a proof of loss when required by us.

  **6.** Provide access to any data and/or records, from any source and/or recorded by any method or means, that we reasonably request for use in the evaluation or defense of any claim or suit and permit us to make copies of such data or records.

  **7.** Preserve any tangible property or evidence as long as we request.

  **8.** Permit us to inspect and appraise the damaged property before its repair or disposal.

**C.** A person seeking Uninsured Motorists Coverage must also:

  **1.** Promptly notify the police if a hit-and-run driver is involved.

  **2.** Promptly send us copies of the legal papers if a suit is brought.

**D.** A person seeking Coverage For Damage To Your Auto must also:

  **1.** Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

  **2.** Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

## PART F — GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

**A.** This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** The "insured" has a duty to notify us as soon as possible of any change which may affect the premium or the risk under this policy. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy



term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles; or

4. Coverage, deductible or limits.

If a change resulting from **A.** or **B.** requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

**C.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This Paragraph **(C.)** does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

**D.** Any terms of this policy which may be in conflict with statutes of the state in which the policy is issued are hereby amended to conform.

**E.** A waiver of any part or condition of this policy must be in writing by us to be valid.

**FRAUD AND MISREPRESENTATION**

**A.** This policy was issued in reliance on the information you provided at the time of your application for insurance coverage. We may void this policy, deny coverage under this policy, or, at our election, assert any other remedy available under applicable law, if you, or any "insured" person seeking coverage under this policy, knowingly, or unknowingly concealed, misrepresented or omitted any material fact or engaged in fraudulent conduct at the time the application was made or at any time during the policy period.

**B.** We may void this policy, deny coverage for an accident or loss, or at our election, assert any other remedy available under applicable law, if any "insured" person or any other person seeking coverage under this policy has knowingly or unknowingly concealed or misrepresented any material fact or engaged in fraudulent conduct in connection with the filing or settlement of any claim.

**C.** If we void this policy, this shall not affect the liability coverage of this policy up to the minimum limits required by the financial responsibility law of the state in which the policy is written, if we have certified your policy as proof of financial responsibility to the registrar of motor vehicles of the state in which the policy is written, and if the accident occurs before we notify the named insured that the policy is void. If we void this policy, you must reimburse us if we make a payment.

**D.** No person or organization who engages in fraudulent conduct in connection with the application process, an accident or filing a claim, or engages in any material misrepresentation regarding the issuance of this policy shall be entitled to receive any payment under this policy at any time.

**LEGAL ACTION AGAINST US**

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part **A**, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.



**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

**OUR RIGHT TO RECOVER PAYMENT**

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

 **1.** Whatever is necessary to enable us to exercise our rights; and

 **2.** Nothing after loss to prejudice them.

 However, our rights in this Paragraph **(A.)** do not apply under Part **D**, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

 **1.** Hold in trust for us the proceeds of the recovery; and

 **2.** Reimburse us to the extent of our payment.

**POLICY PERIOD AND TERRITORY**

**A.** This policy applies only to accidents and losses which occur:

 **1.** During the policy period as shown in the Declarations; and

 **2.** Within the policy territory.

**B.** The policy territory is:

 **1.** The United States of America, its territories or possessions;

 **2.** Puerto Rico; or

 **3.** Canada.

 This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

 All coverages except Uninsured Motorists apply to accidents and losses in Mexico, if within 25 miles of the United States boundary. We will base the amount of any Comprehensive or Collision loss in Mexico on cost at the nearest United States point.

 NOTE: You may need to buy auto insurance from a Mexican insurance company — regardless of coverage provided by this policy — before driving in Mexico. Otherwise, you may be subject to jail detention, auto impoundment, and other legal complications in case of an accident.

**TERMINATION**

**A. Cancellation**

 This policy may be cancelled during the policy period as follows:

 **1.** The named insured shown in the Declarations may cancel by:

  **a.** Returning this policy to us; or

  **b.** Giving us advance written or oral notice of the date cancellation is to take effect.

 **2.** We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

  **a.** At least 10 days notice:

   **(1)** If cancellation is for nonpayment of premium; or

   **(2)** If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

  **b.** At least 30 days notice in all other cases.



**3.** After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

    **a.** For nonpayment of premium; or

    **b.** If your driver's license or that of:

        **(1)** Any driver who lives with you; or

        **(2)** Any driver who customarily uses "your covered auto";

    has been suspended or revoked. This must have occurred:

        **(1)** During the policy period; or

        **(2)** Since the last anniversary of the original effective date if the policy period is other than 1 year; or

    **c.** If the policy was obtained through material misrepresentation.

**B. Nonrenewal**

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 30 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

**1.** Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

**2.** 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

**3.** 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

**C. Automatic Termination**

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions**

**1.** We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

**2.** If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

**3.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**ASSIGNABILITY**

No interest in this policy can be transferred without our written consent. However, if the named insured dies, coverage will stay in force for the rest of the policy period for:

**1.** Anyone having proper temporary custody of "your covered auto"; and

**2.** The appointed legal representative.



**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

**OPTIONAL PAYMENT OF PREMIUM IN INSTALLMENTS**

The premium for this policy may be paid in installments, under terms and conditions approved where required by the Department of Insurance. For each separate installment payment there may be an installment service charge.

**RENEWAL**

This policy is written for the period of time shown in the Declarations. We will renew it for successive policy periods, subject to the following conditions:

**A.** Renewal will be in accordance with policy forms, rules, rates or fees and rating plans in use by us at the time.

**B.** All premiums, premium installment payments, and fees must be paid when due, whether payable directly to us or through a premium finance plan.

**C.** Prior to the expiration of a policy term for which premium has been paid, we will mail a notice to the first named insured for the premium required to renew or maintain the policy in effect. We will mail this notice to the address last known to us.

**DIVIDENDS**

The first named insured is entitled to any dividends which are declared by the Board of Directors and are applicable to coverages in this policy.

**NON-SUFFICIENT FUNDS AND LATE PAYMENT CHARGES**

The company reserves the right to impose a fee for any premium payment that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments, or if the premium is not paid by the due date. This is under the terms and conditions approved where required by the Department of Insurance.

If the initial premium payment for this policy is unable to be processed due to non-sufficient funds as indicated above, we reserve the right to void the policy back to the date of inception. When we void the policy, we will not be liable for any claims which occurred during the policy period. This includes any claims reported to us prior to receiving notice of the non-sufficient funds payment.

**APPLICABLE CONTRACT LAW**

The contract law of the state where the policy was issued governs the interpretation of this contract, except for the Mutual Policy Conditions and Proxy, which shall be governed by the insuring company's state of domicile.

**INTEREST RATE**

If a court determines that interest on judgment, decree, or order for the payment of money is required by law on amounts due and payable under the policy to an "insured", or if it is otherwise determined by us that you are entitled to interest on a payment from us, it will be paid at a rate of two percent per annum, unless another rate is required by law.

**JOINT AND INDIVIDUAL INTERESTS**

If there is more than one person who is a named insured as shown in the Declarations for this policy, any such person may cancel or change this policy. Such action will be binding on any "insured".



**BENEFITS**

Subject to applicable eligibility rules, it is agreed that "Nationwide," or an organization which "Nationwide" has contracted with for this purpose, may:

1.  Provide "participants" the opportunity to obtain benefits, such as memberships, merchandise, services, seminars, coupons, points, vouchers, gift cards or other things; or,

2.  Make charitable contributions in recognition of "participants"; and

3.  Modify or discontinue Benefits at any time without notice.

The following terms, as defined, are applicable to Benefits:

1.  "Participants" means you, or others related by blood, marriage or other legally recognized familial relationship living in the participant's household.

2.  "Nationwide" means the company issuing this policy as listed in the Declarations and all affiliated companies.

**MUTUAL POLICY CONDITIONS**

The following provisions are applicable only to policies issued by Nationwide Mutual Insurance Company or Nationwide Mutual Fire Insurance Company.

**Nationwide Mutual Insurance Company**

**Mutual Policy Conditions** — If this policy is issued by Nationwide Mutual Insurance Company, the first named insured is a member of the Company while this policy or any other policy issued by the Company is in force. While a member, the first named insured is entitled to one vote only — regardless of the number of policies issued by the Company to the first named insured — either in person or by proxy at any meeting of the members of the Company.

The annual meeting of members of Nationwide Mutual Insurance Company will be held at the Company's home office in Columbus, Ohio, at 10:00 a.m. (Eastern) on the first Thursday of April. If the Board of Directors of the Company should elect to change the time or place of such meeting, the Company will mail notice of the change to the member at the address last known to it. The Company will mail this notice at least 10 days in advance of the meeting date.

**Proxy** — By accepting this policy, the member appoints the Chairman of the Board of Directors of the Company, with full power of substitution, to be the member's proxy, and such individual is thereby authorized and empowered to vote on behalf of the member on all matters presented for a vote at any meeting of the members of the Company. The proxy will continue in force for the full duration of this policy or any renewal thereof issued by the Company to the member. This proxy may be revoked at any time by providing written notice of such revocation to:

Secretary

Nationwide

Attention: Proxy Revocation

One Nationwide Plaza

Columbus, Ohio 43215

The member may also revoke this proxy in person at any meeting of the members by so announcing in the open meeting before any vote is taken or the proxy authority is exercised.

The proxy granted to the Chairman of the Board of Directors of the Company will be superseded by any other valid proxy filed with the Secretary of the Company in accordance with the Company's bylaws, a copy of which will be provided upon written request to the Secretary of the Company.



**Nationwide Mutual Fire Insurance Company**

**Mutual Policy Conditions** — If this policy is issued by Nationwide Mutual Fire Insurance Company, the first named insured is a member of the Company while this policy or any other policy issued by the Company is in force. While a member, the first named insured is entitled to one vote only — regardless of the number of policies issued by the Company to the first named insured — either in person or by proxy at any meeting of the members of the Company.

The annual meeting of members of Nationwide Mutual Fire Insurance Company will be held at the Company's home office in Columbus, Ohio, at 9:30 a.m. (Eastern) on the first Thursday of April.  If the Board of Directors of the Company should elect to change the time or place of such meeting, the Company will mail notice of the change to the member at the address last known to it. The Company will mail this notice at least 10 days in advance of the meeting date.

**Proxy** — By accepting this policy, the member appoints the Chairman of the Board of Directors of the Company, with full power of substitution, to be the member's proxy, and such individual is thereby authorized and empowered to vote on behalf of the member on all matters presented for a vote at any meeting of the members of the Company. The proxy will continue in force for the full duration of this policy or any renewal thereof issued by the Company to the member. This proxy may be revoked at any time by providing written notice of such revocation to:

> Secretary
>
> Nationwide
>
> Attention: Proxy Revocation
>
> One Nationwide Plaza
>
> Columbus, Ohio 43215

The member may also revoke this proxy in person at any meeting of the members by so announcing in the open meeting before any vote is taken or the proxy authority is exercised.

The proxy granted to the Chairman of the Board of Directors of the Company will be superseded by any other valid proxy filed with the Secretary of the Company in accordance with the Company's bylaws, a copy of which will be provided upon written request to the Secretary of the Company.

This policy is non-assessable, meaning it is not subject to any assessment beyond the premiums required for each policy term.



**IN WITNESS WHEREOF:** The company listed in the Declarations has caused this policy to be signed and countersigned as may be required by a duly authorized representative of the company.

**President**
ALLIED Property and Casualty Insurance Company
AMCO Insurance Company
Colonial County Mutual Insurance Company
Harleysville Insurance Company of New Jersey
Nationwide Affinity Insurance Company of America
Nationwide Assurance Company
Nationwide General Insurance Company
Nationwide Insurance Company of America
Nationwide Mutual Fire Insurance Company
Nationwide Mutual Insurance Company
Nationwide Property and Casualty Insurance Company
Titan Insurance Company

**Secretary**
ALLIED Property and Casualty Insurance Company
AMCO Insurance Company
Colonial County Mutual Insurance Company
Crestbrook Insurance Company
Depositors Insurance Company
Harleysville Insurance Company of New Jersey
Nationwide Affinity Insurance Company of America
Nationwide Agribusiness Insurance Company
Nationwide Assurance Company
Nationwide General Insurance Company
Nationwide Insurance Company of America
Nationwide Mutual Fire Insurance Company
Nationwide Mutual Insurance Company
Nationwide Property and Casualty Insurance Company
Titan Insurance Company

**President**
Depositors Insurance Company

**President**
Nationwide Agribusiness Insurance Company

**President**
Crestbrook Insurance Company

A 4500 07 16

Page 27 of 27

*Includes copyrighted material of ISO Properties, Inc., with its permission. ©ISO Properties, Inc.*
*Nationwide, the Nationwide N and Eagle and Nationwide is on your side are service marks of Nationwide Mutual*
*Insurance Company. © 2015 Nationwide*



A 4574 07 16

## RENTAL REIMBURSEMENT/TRANSPORTATION EXPENSES — RENTAL DAYS PLUS

Coverage is subject to all terms and conditions of the policy, including **PART D — COVERAGE FOR DAMAGE TO YOUR AUTO**, except as changed by this endorsement.

### DEFINITIONS

**A.** "Collision Repair Service Program" means our current designated network of repair facilities that have agreed with us to provide guaranteed vehicle related repair services to our customers.

**B.** "Glass Program" means our designated vendors and/or network of glass repairers that have agreed with us to provide guaranteed vehicle glass services to our customers.

**C.** "Rental Program Provider" means our designated vendors or network of vendors that have agreed with us to provide rental vehicles to our customers.

### INSURING AGREEMENT

**COVERED EXPENSES are either:**

**A.** Rental Reimbursement/Transportation Expenses

   **1.** When there is a loss to one of "your covered autos" for which the Declarations indicates Rental Reimbursement/Transportation Expenses Coverage applies, we will reimburse you for expenses you incur to rent a substitute auto. This coverage applies only if:

      **a.** The auto cannot be operated due to a covered loss; or if your auto can be operated, when left at a shop for agreed repairs, and

      **b.** The loss is covered under **Part D** of this policy.

   Our payment will be limited to that period of time reasonably required to repair or replace the auto. We will pay up to the amount shown in the Declarations as applicable to that vehicle.

   **2.** The **TRANSPORTATION EXPENSES** provision of **Part D** is replaced by the following:

   In addition, we will pay up to the amount shown in the Declarations as applicable to that vehicle for transportation expenses incurred by you. This applies only in the event of the total theft of "your covered auto". We will pay only transportation expenses incurred during the period:

      **a.** Beginning 48 hours after the theft; and

      **b.** Ending when "your covered auto" is returned to use or we pay for its loss.

**B.** Rental Days Plus Auto Rental Expense

   **1.** When there is a loss to one of "your covered autos" for which the Declarations indicates Rental Reimbursement/Transportation Expenses Coverage applies, we will reimburse you for expenses you incur to rent a substitute auto. When you utilize Rental Days Plus auto rental expense coverage, your maximum daily limit stated in the Declarations continues until your auto is repaired, including a reasonable time thereafter, if:

      **a.** The auto cannot be operated due to a covered loss; or if your auto can be operated, when left at a shop for agreed repairs, and

      **b.** The loss is covered under **Part D** of this policy, and

      **c.** You agree to use a repair facility and glass vendor, as applicable, that participates in our "Collision Repair Service Program" or our "Glass Program", and



**d.** Use a rental vehicle provided by our "Rental Program Provider".

In the event "your covered auto" is determined to be a total loss after repairs have begun, coverage continues for a reasonable amount of time after a total loss settlement is agreed to, not to exceed 30 days after the offer of the total loss settlement.

When you use Rental Days Plus Auto Rental Expense we will reimburse any deductible, up to this endorsement's per accident limit stated in the Declarations, that you are required to pay us as a result of a covered loss that occurs while in a rental auto due to a covered Other than Collision or Collision loss.

**2.** The **TRANSPORTATION EXPENSES** provision of **Part D** is replaced by the following:

In addition, we will pay up to the amount shown in the Declarations as applicable to that vehicle for transportation expenses incurred by you. This applies only in the event of the total theft of "your covered auto". We will pay only transportation expenses incurred during the period:

**a.** Beginning 48 hours after the theft; and

**b.** Ending when "your covered auto" is returned to use or we pay for its loss.

This endorsement applies as stated in the policy Declarations.

This endorsement is issued by the company shown in the Declarations as the issuing company.

*Includes copyrighted material of Insurance Services Office , Inc. with its permission.*
*Nationwide, the Nationwide N and Eagle and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. ©2015 Nationwide*



A 5034 07 16

# SPECIAL PROVISIONS — OHIO

Coverage is subject to all terms and conditions in the policy except as changed in this endorsement.

## DEFINITIONS

Item **D.** "Bodily injury" is replaced with the following:

**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results. "Bodily injury" does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm to the same person.

## PART A — LIABILITY COVERAGE

Part **A** is amended as follows:

**A.** Exclusion **A.12.** is replaced by the following:

**12.** For "bodily injury" to you or any "family member". However, this exclusion does not apply to a wrongful death action brought against an "insured".

## PART F — GENERAL PROVISIONS

### FRAUD AND MISREPRESENTATION

Items **A.** and **B.** under **FRAUD AND MISREPRESENTATION** are replaced by the following:

**A.** This policy was issued in reliance on the information you provided at the time of your application for insurance coverage. We may void this policy, deny coverage under this policy, or, at our election, assert any other remedy available under applicable law, if you, or any insured person seeking coverage under this policy, knowingly concealed, misrepresented or omitted any material fact or engaged in fraudulent conduct at the time the application was made or at any time during the policy period.

**B.** We may void this policy, deny coverage for an accident or loss, or, at our election, assert any other remedy available under applicable law, if any "insured" person or any other person seeking coverage under this policy has knowingly concealed or misrepresented any material fact or engaged in fraudulent conduct in connection with the filing or settlement of any claim.

The following section is added:

### REPRESENTATIONS AND WARRANTIES IN THE APPLICATION

The application for this policy, whether written or orally recorded, is incorporated herein and made part of this policy. When we refer to the policy, we mean the auto policy, the application, the Declarations Page, and the endorsements. You agree that the statements in the Declarations and the application for this policy are issued in reliance upon the truth of such representations and warranties. If it is determined that any warranty made by you is incorrect, this policy may be held void ab initio, or void back to the date of the inception, upon return of your premium.

Warranties which, if not correct, could void the policy from the beginning are:

1. Registered owner of the vehicle;

2. All drivers and other operators in the household;

3. Use of the insured vehicle;

4. Make/model/year (identity) of the insured vehicle;

5. Correct address of the "insured" and correct garaging address;

6. Status of driver's license;

7. Prior motor vehicle accidents;

8. Prior claims involving loss to motor vehicles;

 **Nationwide®** is on your side

A 5034 07 16

**9.** Existing damage to "your covered auto".

The **TERMINATION** Provision of Part **F** is replaced by the following:

**TERMINATION**

**A. Cancellation**

This policy may be cancelled during the policy period as follows:

**1.** The named insured shown in the Declarations may cancel by:

   **a.** Returning this policy to us; or

   **b.** Giving us advance written or oral notice of the date cancellation is to take effect.

**2.** We may cancel by mailing to the named insured shown in the Declarations at the address last known by us:

   **a.** At least 10 days' notice:

     **(1)** If cancellation is for nonpayment of premium; or

     **(2)** If notice is mailed before the first 90 days this policy is in effect, and this is not a renewal or continuation policy; or

   **b.** At least 30 days' notice in all other cases.

**3.** Up to the time this policy or any coverage has been in effect for 90 days, or if this is a renewal or continuation policy, we will cancel only:

   **a.** For nonpayment of premium;

   **b.** If your driver's license has expired or been suspended or revoked. This must have occurred:

     **(1)** During the policy period; or

     **(2)** Since the last anniversary of the original effective date if the policy period is other than one year.

     However, in the event that the driver's license of:

     **(1)** Any driver who lives with you; or

     **(2)** Any driver who customarily uses "your covered auto";

     Has expired or been suspended or revoked, we may issue an endorsement providing that coverage will not be afforded to that named person; or

   **c.** If the policy was obtained through material misrepresentation, fraud or concealment.

**B. Nonrenewal**

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address last known by us. Notice will be mailed at least 30 days before the end of the policy period. If the policy period is other than one year or written without a fixed expiration date, we will have the right not to renew or continue it only at each anniversary of its original effective date.

**C. Automatic Termination**

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions**

**1.** We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

A 5034 07 16



2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

The following provision is added:

## HOME AND CAR SPECIAL DEDUCTIBLE

When you have in effect a Homeowner, Condominium or Tenant ("Property") Policy  issued by an affiliated company of Nationwide Mutual Insurance Company that covers your "residence premises" as defined in the Property Policy, and the Property Policy includes the Home and Car Special Deductible provision, the following will apply:

**A.** If the same occurrence results in a covered loss to "your covered auto(s)" and to property covered under your Property Policy, the largest deductible applicable shall apply once to all covered losses, subject to waiver or reimbursement of lower deductible(s).

1. For purposes of this provision, if the deductible you selected for "your covered auto" or your Property Policy is reduced by other applicable policy provisions or endorsements, the reduced deductible applies as the deductible for "your covered auto" or your Property policy.

2. If one or more deductibles are waived by other applicable policy provisions or endorsements, the largest of the remaining deductibles will apply as stated in **A.** above.

**B.** This provision applies only if the total amount of covered loss or damage to "your covered auto(s)" and to property covered under your Property policy exceeds the largest of the applicable deductibles and a loss payment is issued under the Personal Auto Policy and the Property Policy.

This endorsement applies as stated in the policy Declarations.

This endorsement is issued by the company shown in the Declarations as the issuing company.

*Includes copyrighted material of Insurance Services Office , Inc. with its permission.*
*Nationwide, the Nationwide N and Eagle and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. ©2015 Nationwide*



A 5134 07 16

## UNINSURED MOTORISTS COVERAGE — OHIO

Coverage is subject to all terms and conditions of the policy except as changed by this endorsement.

**PART C — UNINSURED MOTORISTS COVERAGE** is replaced by the following:

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of:

  **1.** An "uninsured motor vehicle" as defined in Paragraphs **1.**, **2.** and **4.** of the definition of an "uninsured motor vehicle" because of "bodily injury":

    **a.** Sustained by an "insured"; and

    **b.** Caused by an accident.

  **2.** An "uninsured motor vehicle" as defined in Paragraph **3.** of the definition of an "uninsured motor vehicle" because of "bodily injury" sustained by an "insured".

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our timely notice or written consent is not binding on us.

**B.** "Insured" as used in this endorsement means:

  **1.** You or any "family member".

  **2.** Any other person "occupying" "your covered auto".

  **3.** Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

  **1.** To which no bodily injury liability bond or policy applies at the time of the accident.

  **2.** To which a bodily injury liability bond or policy applies at the time of the accident. In this case, its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of Ohio.

  **3.** Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes "bodily injury" without hitting:

    **a.** You or any "family member";

    **b.** A vehicle which you or any "family member" are "occupying"; or

    **c.** "Your covered auto".

    The facts of the accident or intentional act must be proved. We will only accept independent, corroborative evidence to prove that the "bodily injury", sickness, disease or death of the "insured" was proximately caused by negligence or intentional actions of the unidentified operator of the motor vehicle. For the purposes of this section, the testimony of any "insured" seeking recovery from the insurer shall not constitute independent, corroborative evidence, unless the testimony is supported by additional evidence.

  **4.** To which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:

    **a.** Denies coverage; or

    **b.** Is or becomes the subject of insolvency proceedings in any state.

However, "uninsured motor vehicle" does not include any vehicle or equipment:



A 5134 07 16

1. Owned by or furnished or available for the regular use of you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law.

3. Owned by any governmental unit or agency, unless the owner or operator of the "uninsured motor vehicle" has:

   a. An immunity under the Ohio Political Subdivision Tort Liability Law; or

   b. A diplomatic immunity.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying" or when struck by any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying" or when struck by any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

3. While "occupying" any motor vehicle:

   a. Used in an organized or prearranged competitive event, including but not limited to:

      (1) Racing contest or event;

      (2) Speed contest or event; or

      (3) In practice or preparation for any racing or speed contest or event.

   b. Used in "performance testing" that is done on a closed road, or a race track, or a testing facility environment where the "insured" is not competing.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim and such settlement prejudices our right to recover payment.

2. While "occupying" "your covered auto" when it is being used:

   a. To carry persons or property for a fee or compensation. This includes but is not limited to any period of time that "insured" is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle; or

   b. On a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

   Exclusion **B.2.a.** does not apply to motor vehicles used in shared-expense car pools or while the vehicle is used in the course of volunteer work for a tax-exempt organization.

3. While using a motor vehicle:

   a. Without a reasonable belief of being entitled to do so;

   b. The "insured" has stolen; or

   c. The "insured" knows to have been stolen.

   An "insured" shall not be held to have a reasonable belief of being entitled to operate a motor vehicle if that person's license has been suspended, revoked or never issued.

   This exclusion does not apply to the use of "your covered auto" by:

   a. You;

A 5134 07 16                                                                          Page 2 of 4



A 5134 07 16

    **b.** A "family member";

    **c.** A "business" partner, employee, or agent of you or a "family member".

  **4.** While "occupying" or when struck by, "your covered auto" while:

    **a.** Enrolled in a personal vehicle sharing program under the terms of a written agreement; and

    **b.** Being used in connection with such personal vehicle sharing program by anyone other than you or any "family member".

**C.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

  **1.** Workers' compensation law; or

  **2.** Disability benefits law.

**D.** We do not provide Uninsured Motorists Coverage for any of the following:

  **1.** Judgments;

  **2.** Costs;

  **3.** Attorney fees; or

  **4.** Claims;

  for punitive or exemplary damages.

## LIMIT OF LIABILITY

**A.** The Limit Of Liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the Limit Of Liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

  **1.** "Insureds";

  **2.** Claims made;

  **3.** Vehicles or premiums shown in the Declarations; or

  **4.** Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

  **1.** Part **A** or Part **B** of this policy; or

  **2.** Any Underinsured Motorists Coverage provided by this policy.

**C.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

  **1.** Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.



2. Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any collectible insurance providing such coverage on a primary basis.

3. If an "insured" other than you or a "family member" is a named insured or an insured household member for uninsured motorists or underinsured motorist coverage under another policy, our coverage is excess to any such coverage. Our coverage will apply only in the amount by which the limit of coverage under this policy exceeds the limit of coverage of the policy or policies under which such insured is a named insured or insured household member.

4. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

**PART F — GENERAL PROVISIONS, LEGAL ACTION AGAINST US,** the following is added:

**SUIT AGAINST US**

No lawsuit may be filed against us by anyone claiming any of the coverages provided in this policy until the said person has fully complied with all the terms and conditions of this policy, including but not limited to the protection of our subrogation rights.

Subject to the preceding paragraph, under the Uninsured Motorists coverage of this policy, any lawsuit must be filed against us:

**A.** Within three years from the date of the accident; or

**B.** Within one year after the Liability insurer for the owner or operator of the motor vehicle liable to the insured has become the subject of insolvency proceedings in any state;

   whichever is later.

This endorsement applies as stated in the policy Declarations.

This endorsement is issued by the company shown in the Declarations as the issuing company.

A 5134 07 16

Page 4 of 4

*Includes copyrighted material of Insurance Services Office , Inc. with its permission.*
*Nationwide, the Nationwide N and Eagle and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. ©2015 Nationwide*

**Nationwide®**
is on your side

A 5234 07 16

## UNDERINSURED MOTORISTS COVERAGE — OHIO

Coverage is subject to all terms and conditions of the policy except as changed by this endorsement.

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

   **1.** Sustained by an "insured"; and

   **2.** Caused by an accident.

   The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

   We will pay under this coverage only if **1.** or **2.** below applies:

   **1.** The limits of liability under any bodily injury liability bonds or policies applicable to the "underinsured motor vehicle" have been exhausted by payment of judgments or settlements; or

   **2.** A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

     **a.** Have been given prompt written notice of such tentative settlement; and

     **b.** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

**B.** "Insured" as used in this endorsement means:

   **1.** You or any "family member".

   **2.** Any other person "occupying" "your covered auto".

   **3.** Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.** "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but its limit for bodily injury liability is either:

     **a.** Less than the limit of liability for this coverage; or

     **b.** Reduced by payments to others injured in the accident to an amount which is less than the limit of liability for this coverage.

   However, "underinsured motor vehicle" does not include any vehicle or equipment:

   **1.** To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the minimum limit for bodily injury liability specified by the financial responsibility law of Ohio.

   **2.** Owned by or furnished or available for the regular use of you or any "family member".

   **3.** Owned by any governmental unit or agency.

   **4.** Operated on rails or crawler treads.

   **5.** Designed mainly for use off public roads while not upon public roads.

   **6.** While located for use as a residence or premises.

   **7.** Owned or operated by a person qualifying as a self-insurer under any applicable motor vehicle law.

   **8.** To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

     **a.** Denies coverage; or

A 5234 07 16



**Nationwide®**
is on your side

A 5234 07 16

    **b.** Is or becomes insolvent.

**EXCLUSIONS**

**A.** We do not provide Underinsured Motorists Coverage for "bodily injury" sustained:

   **1.** By an "insured" while "occupying" or when struck by any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

   **2.** By any "family member" while "occupying" or when struck by any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

   **3.** While "occupying" any motor vehicle:

     **a.** Used in an organized or prearranged competitive event, including but not limited to:

       **(1)** Racing contest or event;

       **(2)** Speed contest or event; or

       **(3)** In practice or preparation for any racing or speed contest or event.

     **b.** Used in "performance testing" that is done on a closed road, or a race track, or a testing facility environment where the "insured" is not competing.

**B.** We do not provide Underinsured Motorists Coverage for "bodily injury" sustained by any "insured":

   **1.** While "occupying" "your covered auto" when it is being used:

     **a.** To carry persons or property for a fee or compensation. This includes but is not limited to any period of time that "insured" is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle;  or

     **b.** On a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery.

    Exclusion **B.1.a.** does not apply to motor vehicles used in shared-expense car pools or while the vehicle is used in the course of volunteer work for a tax-exempt organization.

   **2.** While using a motor vehicle:

     **a.** Without a reasonable belief of being entitled to do so;

     **b.** The "insured" has stolen; or

     **c.** The "insured" knows to have been stolen.

    An "insured" shall not be held to have a reasonable belief of being entitled to operate a motor vehicle if that person's license has been suspended, revoked or never issued.

    This exclusion does not apply to the use of "your covered auto" by:

     **a.** You;

     **b.** A "family member"; or

     **c.** A "business" partner, employee, or agent of you or a "family member".

   **3.** While "occupying" or when struck by "your covered auto" while:

     **a.** Enrolled in a personal vehicle sharing program under the terms of a written agreement; and

     **b.** Being used in connection with such personal vehicle sharing program by anyone other than your or any "family member".

**C.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

   **1.** Workers' compensation law; or

   **2.** Disability benefits law.

A 5234 07 16

**Page 2 of 4**



**D.** We do not provide Underinsured Motorists Coverage for any of the following:

  **1.** Judgments;

  **2.** Costs;

  **3.** Attorney fees; or

  **4.** Claims;

  for punitive or exemplary damages.

**LIMIT OF LIABILITY**

**A.** The Limit Of Liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the Limit Of Liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

  This is the most we will pay regardless of the number of:

  **1.** "Insureds";

  **2.** Claims made;

  **3.** Vehicles or premiums shown in the Declarations; or

  **4.** Vehicles involved in the accident.

**B.** The limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part **A** of this policy.

**C.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A**, Part **B** or Part **C** of this policy.

**D.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**OTHER INSURANCE**

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided by this endorsement:

  **1.** Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

  **2.** Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any collectible insurance providing such coverage on a primary basis.

  **3.** If an "insured" other than you or a "family member" is a named insured or an insured household member for uninsured motorists or underinsured motorists coverage under another policy, our coverage is excess to any such coverage. Our coverage will apply only in the amount by which the limit of coverage under this policy exceeds the limit of coverage of the policy or policies under which such insured is a named insured or insured household member.

  **4.** If the coverage under this policy is provided:

    **a.** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

 **Nationwide**® *is on your side*

A 5234 07 16

    **b.** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

**ADDITIONAL DUTIES**

A person seeking coverage under this endorsement must also promptly:

    **1.** Send us copies of the legal papers if a suit is brought; and

    **2.** Notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle". However, this Paragraph **(2.)** does not apply if failure to notify us does not prejudice our rights against the insurer, owner or operator of such "underinsured motor vehicle".

**PART F — GENERAL PROVISIONS, LEGAL ACTION AGAINST US**, the following is added:

**SUIT AGAINST US**

No lawsuit may be filed against us by anyone claiming any of the coverages provided in this policy until the said person has fully complied with all the terms and conditions of this policy, including but not limited to the protection of our subrogation rights.

Subject to the preceding paragraph, under the Underinsured Motorists coverage of this policy, any lawsuit must be filed against us:

**A.** Within three years from the date of the accident; or

**B.** Within one year after the Liability insurer for the owner or operator of the motor vehicle liable to the insured has become the subject of insolvency proceedings in any state;

    whichever is later.

The following is added to the **OUR RIGHT TO RECOVER PAYMENT** Provision in Part **F**:

**OUR RIGHT TO RECOVER PAYMENT**

Our rights do not apply under Paragraph **A.** with respect to Underinsured Motorists Coverage if we:

    **1.** Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

    **2.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

    **1.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

    **2.** We also have a right to recover the advanced payment.

This endorsement applies as stated in the policy Declarations.

This endorsement is issued by the company shown in the Declarations as the issuing company.

*Includes copyrighted material of Insurance Services Office , Inc. with its permission.*
*Nationwide, the Nationwide N and Eagle and Nationwide is on your side are service marks of Nationwide Mutual Insurance Company. ©2015 Nationwide*